**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TRUSTEES OF THE N.E.C.A. - IBEW LOCAL 176 HEALTH, WELFARE, PENSION, VACATION, AND TRAINING TRUST FUNDS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 07 CV 2120 |
| vs. | ) ) ) ) | Judge Joan H. Lefkow |
| CM MANAGEMENT SERVICES CO. d/b/a AMERISIGN GROUP, Illinois corporation and ROBERT J. SCHLYER, individually, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Trustees of the National Electrical Contractors Association ("NECA") - International Brotherhood of Electrical Workers ("IBEW") Local 176 Health, Welfare, Pension, Vacation and Training Trust Funds (collectively, the "Trustees"), filed a complaint against CM Management Services Co., d/b/a Amerisign Group, an Illinois corporation ("CM Management")[1] and Robert J. Schlyer (collectively, "defendants") alleging failure to make contributions to union welfare funds in accordance with the terms of certain collective bargaining agreements to which CM Management is bound. Count I seeks $21,964.31 from CM Management in contributions due to the funds, audit costs and liquidated damages. Count II seeks the same amount from

---

[1]According to the Illinois Secretary of State's Records, CM Management was involuntarily dissolved on April 13, 2007.

1

Schlyer for willful violations of the trust agreements. Presently before the court are the parties' cross-motions for summary judgment. For the following reasons, the Trustees' motion for summary judgment [#21] is granted and CM Management's cross-motion for summary judgment [#23] is denied.

## JURISDICTION

The court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 and the National Labor Relations Act, codified at 29 U.S.C. § 185, as well as Section 502 of the Employee Retirement Income and Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1132 et seq.

## STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). While the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), where a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Celotex Corp.* v. *Cartrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he burden on the moving party may be discharged by 'showing' - - that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The dispute in this case primarily concerns contract interpretation, a matter of law particularly suited to summary adjudication. *See Automation by Design, Inc.* v. *Raybestos Prods. Co.*, 463 F.3d 749, 753 (7th Cir. 2006) ("Because the primary question is interpretation of a written contract, this matter is particularly amenable to summary judgment."); *see also GCIU v. Employer Retirement Fund* v.

2

*Chicago Tribune Co.*, 66 F.3d 862, 864 (7th Cir. 1995) (granting motion for summary judgment in a fringe benefits case where material facts were undisputed and the issue presented was solely one of contract interpretation) (citing *Murphy* v. *Keystone Steel & Wire Co.*, 61 F.3d 560, 564-65 (7th Cir. 1995).

## BACKGROUND[2]

This case arises from CM Management's admitted failure to make certain contributions to fringe benefit funds required by a collective bargaining agreement to which it is bound. There are no disputed material facts and the remaining issue is a legal question: whether the persons on whose behalf the Trustees seek contributions are "employees" within the meaning of the collective bargaining agreement at issue. The collective bargaining agreement at issue is styled "IBEW Local Union 176 Sign Agreement" ("CBA") and was executed between IBEW Local 176 (the " Union") and NECA, a multi-employer bargaining association authorized to enter into such agreements by certain employers who employ Union members. *See* Ex. B to Pls.' L.R. 56.1 SoF. The CBA requires that signatory employers[3] make contributions on behalf of their employees[4] to certain fringe benefit funds, including welfare, pension and vacation funds ("the

---

[2]The following facts are undisputed.

[3]The CBA defines "employer" as "a person, firm or corporation having certain qualifications, knowledge, experience and financial responsibility required of everyone desiring to be an Employer in the Electrical Sign Industry and recognizes the terms and provisions of this Agreement." *See* Ex. B to Pls.' L.R. 56.1 SoF at § 2.01.

[4]The CBA defines "employees" as "those employees coming within the bargaining unit provided for in Section 2.03 hereof." *Id*. at § 2.02. Section 2.03 further provides that "[t]he Employers agree to recognize the Union as the sole and exclusive representative of all employees coming within the bargaining unit consisting of all employees in the different employee work classifications set forth in Section 4.03 hereof for the purpose of collective bargaining with respect to wages, rates of pay, hours and other conditions of employment. Section 4.03 is not included in the version of the CBA attached by the Trustees as Exhibit B to their statement of facts.

funds") established pursuant to declarations of trust.  *See* Pls.' L.R. 56.1 SoF ¶¶ 5-7; Affidavit of David Udstuen, Business Manager of NECA-IBEW LOCAL176, attached to Pls.' L.R. 56.1 SoF as Ex. G.  Article V of the CBA, which governs employee fringe benefits, provides that employers are to submit monthly reports documenting their contributions to the administrator of the funds ("contribution reports").  *See* CBA, attached as Ex. B to Pls.' L.R. 56.1 SoF § 5.05 ("The parties agree that all contributions and/or deductions referred to in this Article shall be reported on Form MPR-144."); Ex. I to Pls.' L.R. 56.1 SoF.

CM Management admits that it became bound by the CBA and the applicable declarations of trust on May 26, 2005, when it entered into a Letter of Assent with the Union.  *See* Defs.' Reply to Pls.' L.R. 56.1 SoF ¶ 13; Letter of Assent, attached as Ex. A to Pls.' L.R. 56.1 SoF.  CM Management also admits that it agreed to submit its books and records, upon reasonable notice by the Trustees, to an independent auditor to determine whether the company was in compliance with its duty to make fringe benefit contributions on behalf of its employees.  Defs.' Reply to Pls.' L.R. 561 SoF ¶ 13.  Furthermore, CM Management does not contest that in the event an audit disclosed "any willful violation" of the CBA and the declarations of trust, its owners and partners would be "personally liable for any underpayment or other pecuniary loss to the [funds] attributable to such conduct."  *See* Defs.' Reply to Pls.' L.R. 56.1 SoF ¶ 22.

In early 2008, the Trustees sought an audit of CM Management to determine whether it was making fringe benefit contributions in accordance with the CBA.  The audit was undertaken by the auditing firm of Levinson, Simon & Sprung P.C., which determined that CM Management had not made all of the required contributions on behalf of Saul Tinoco, a minority shareholder

4

of CM Management.[5] The auditors determined that CM Management owed $14,558.93 in unpaid contributions, including liquidated damages and audit costs for the period between June 1, 2005 and February 28, 2006. *See* Audit, attached as Ex. E to Pls.' L.R. 56.1 SoF; Affidavit of Howard B. Levinson ¶ 6, attached as Ex. F to Pls.' L.R. 56.1 SoF; Affidavit of Kathy Layfield ¶¶ 9-10, attached as Ex. H to Pls.' L.R. 56.1 SoF.

CM Management does not deny that it failed to make fringe benefit contributions on behalf of Saul Tinoco. *See* Defs.' Reply to Pls.' R. 56.1 SoF ¶¶ 16-18. Rather, CM Management contends that it had no obligation to do so because Saul Tinoco was a minority shareholder and, therefore, an employer or owner rather than an employee of CM Management during the time period at issue. Defs.' L.R. 56.1 SoF ¶¶ 2-3. The parties agree that Saul Tinoco, Carlos Tinoco and Vincent Hernandez became shareholders of CM Management (collectively, "minority shareholders") through an agreement with Robert J. Schlyer, the sole shareholder and president of CM Management ("Schlyer"). *See* "Share Sale and Transfer Agreement" ("Shareholder Agreement"), attached as Ex. A to Ans.; Pls.' Resp. to Defs.' L.R. 56.1 SoF ¶ 2. The Shareholder Agreement was executed by the parties on October 15, 2004 and transfers to each minority shareholder 5% of the shares of CM Management.[6] *See* Ex. A to Def.'s Ans. ¶¶ 2-3,7.

---

[5] The Trustees do not identify in their statement of facts the person on behalf of whom CM Management allegedly owes unpaid contributions; however, the contribution reports used in conducting the audit identify only Saul and Carlos Tinoco. *See* Ex. I to Pls.' L.R. 56.1 SoF. Furthermore, the Trustees admit that Saul Tinoco is the sole person on whose behalf the audit was undertaken in their reply and answer to defendants' cross-motion for summary judgment. *See also* Def.'s L.R. 56.1 SoF ¶ 2; Pls.' Resp. to Defs.' L.R. 56.1 SoF ¶ 2, Pls.' Reply and Ans. to Def.'s Cross-Mot. at 9.

[6] Pursuant to the terms of the Shareholder Agreement, the minority shareholders have authority over "managerial operations on a day-to-day basis of the manufacturing and installation of signage products; [t]he purchase of supplies and incurring other ordinary trade expenses . . . . [and to] use company credit cards for purchase of fuel for company vehicles." Ex. A to Def.'s Ans. ¶ 8(a). Schlyer, the majority shareholder, has authority over "[h]iring/firing employees; [c]apital expenditures, incurring debt, and other financing arrangements; [c]hoice of banks and other accounts; [s]hall appear on the

The parties also agree that after Saul and Carlos Tinoco became shareholders, CM Management continued to submit contribution reports on their behalf to the administrator of the funds. *See* Defs.' Reply to Pls.' L.R. 56.1 SoF ¶ 23; Defs.' L.R. 56.1 SoF ¶ 5; Ex. I to Pls.' L.R. 56.1 SoF. The contribution reports were signed by Schlyer, as the President of CM Management, and identify Saul and Carlos Tinoco as employees. *Id*. The contribution reports contain the following statement above each signature line:

> The undersigned hereby adopts and agrees to be bound by the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make required contributions to such funds as provided therein. I hereby acknowledge having received a copy of the above agreement. I further certify that the information contained in this report is a *full and accurate statement of hours worked and wages earned of all employees subject to contributions* . . . .

Ex. I to Pls.' L.R. 56.1 SoF (emphasis added). CM Management submitted contribution reports which identified Carlos and Saul Tinoco as employees until December 2005. *See* Ex. I to Pls.' L.R. 56.1 SoF. CM Management did not submit contribution reports on Saul Tinoco's behalf in January and February of 2006. *See* Def.'s Resp. to Pls.' L.R. 56.1 SoF ¶ 20 (citing Defs.' Ans. ¶ 4). Saul Tinoco, Carlos Tinoco and Vincent Hernandez resigned from CM Management in February 2006. *See* Letter to Robert Schlyer, attached as Ex. B to Defs.' Ans.

## DISCUSSION

---

company's bank signature card; [t]ax returns; [n]egotiating contracts." *Id*. ¶ 8(b). The Shareholder Agreement also provides that Schlyer take a yearly salary, *id*. ¶ 6, while the other shareholders take a salary based on "their hours worked plus a 10% commission *as is drawn currently for any sign sales* plus bonus paid quarterly," *id*. ¶ 7 (emphasis added). Lastly, the Shareholder Agreement states that "[n]othing herein shall be construed as an obligation of [the minority shareholders] to assume any debt of CM Management." *Id*. ¶ 9.

**I.     Liability of CM Management (Count I)**

Because defendants failed to make the contributions referenced in the compliance audit, they are liable under Count I if the court determines that Saul Tinoco remained an employee after he became a minority shareholder. Defendants argue that after executing the Shareholder Agreement, Saul Tinoco was an "owner" who was exempt from the CBA's requirements. *See* Defs.' L.R. 56.1 SoF ¶ 3; Defs.' Cross-Mot. at 2. The defendants fail to support this position factually and legally,[7] citing only the definition of "employer" under Section 2.01 of the CBA. As the Trustees point out, defendants do not attempt to explain how the referenced section supports their position. On its face, Section 2.01 says nothing relevant to the question whether a minority shareholder such as Saul Tinoco should be considered an "owner" or "employer" under the CBA. Defendants also fail to provide legal or factual support for their alternative argument that any failure to make fringe benefit contributions on behalf of Saul Tinoco is excused because he was misappropriating assets from CM Management during the time period for which the Trustees' seek recovery.[8] As the Trustees correctly argue, the absence of evidence supporting

---

[7]Defendant's argument in support of its cross-motion for summary judgment and, presumably, also in response to the Trustees' motion for summary judgment, constitutes less than one page.

[8]Defendants attach pleadings from a case styled *Tinoco* v. *CM Management Servs. Corp.*, *and Robert Schyler* v. *Laura Tinoco, Saul Tinoco, Vincente Hernandez, Raul Farinchini, and R-Signs Services and Design, Inc.*, Case No. 06 L 244, Twelfth Judicial Circuit, Will County, Illinois ("Will County case"). Specifically, defendants attach the "Answer to Amended Third-Party Complaint and Counter Claim," wherein the third-party defendants, Laura Tinoco, Carlos Tinoco, Saul Tinoco and Vincente Hernandez, deny CM Management's and Schlyer's allegations that they misappropriated corporate assets. Defendants also attach orders of default judgment against the third-party defendants in the Will County case. The court finds this evidence unpersuasive because defendants make no legal argument as to why or how the pleadings in the Will County case constitute an affirmative defense or otherwise operate to excuse CM Management and Schlyer from making fringe benefit contributions to the Trustees, as required by the CBA. Furthermore, the Answer in the Will County case can be read to support the position that Saul Tinoco was still an employee after he became a shareholder. In Paragraph 20, the third-party defendants admit CM Management's and Schlyer's allegation that "[o]n or about February 14, 2006, the Tinocos abruptly resigned *as employees* of [CM Management]." *See* Ans. to Amend. Third

7

defendants' position that they were not obligated to make contributions on behalf of Saul Tinoco is sufficient to discharge their burden and permit entry of summary judgment in their favor on Count I. *See supra* at 2. The court need not rest on this finding alone, however, because the Trustees' position is supported by the undisputed facts.

The contribution reports, attached as Exhibit I to the Trustees' statement of facts, support the argument that CM Management was required to continue contributing to the funds on behalf of Saul Tinoco after the Shareholder Agreement was signed. Section 5.05 of the CBA requires employers to submit monthly contribution reports on behalf of their employees. Defendants do not dispute that Schlyer, on behalf of CM Management, continued to sign and submit contribution sheets to the Funds Administrator for Saul and Carlos Tinocos until December 2005, more than a year after they became shareholders. *See* Ex. I to Pls.' L.R. 56.1 SoF. These contribution reports specifically identify Saul Tinoco as an employee and, in signing them, Schlyer acknowledged he was doing so in accordance with the requirements of the CBA and the related declarations of trust. This shows that CM Management and Schlyer identified Saul and Carlos Tinocos as employees within the meaning of the CBA well-after they became shareholders.[9]

Because the defendants have totally failed to provide any legal or factual support for their

---

Party Compl. (emphasis added), Case No. 06 L 244, Twelfth Judicial Circuit, Will County, Illinois, attached to Defs.' L.R. 56.1 SoF.

[9]Defendants assert that they mistakenly continued to make fringe benefit contributions for Saul Tinoco after he became a shareholder because they did not have a full copy of the CBA and were therefore unaware that CM Management was not obligated to continue making such contributions. Defs.' L.R. 56.1 SoF ¶ 5. Accordingly, they request a refund of any such contributions. *Id*. ¶ 6; Defs.' Cross-Motion at 2. Because the defendants fail to show that they were not obligated to make fringe benefit contributions on behalf of Saul Tinoco after he became a shareholder, the court need not consider this request.

position that they were not obligated to make fringe benefit contributions on behalf of Saul Tinoco after he became a minority shareholder, and because the undisputed facts tend to show that defendants themselves treated him as an employee by continuing to make contributions after he was made a shareholder, summary judgment is granted to the Trustees on Count I.[10]

## II. Personal Liability of Schlyer (Count II)

Defendants do not articulate any arguments in opposition to the Trustees' claim in Count

---

[10] The Trustees also argue that the terms of the Shareholder Agreement provide further evidence that Saul Tinoco should be considered an "employee" rather than an "employer" under the CBA. *See* Pls.' Mem. at 10. As the CBA contains only nominal descriptions of the terms "employee" and "employer," *see supra* at n. 3, 4, the court looks to federal common law. *See GCIU*, 66 F.3d at 864-65 (federal common law rules govern contract interpretation in an ERISA action) (citing *Phillips* v. *Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 307 (7th Cir. 1992). "[T]he answer to whether a shareholder-director is an employee depends on "all the incidents of the relationship . . . . with no one factor being decisive." *Clackamas Gastroenterology Assocs., P.C.* v. *Wells*, 538 U.S. 440, 451, 123 S. Ct. 1673, 155 L. Ed. 2d 615 (2003) (determining whether a bookkeeper was an employee within the meaning of the Americans with Disabilities Act by looking to federal common law, and ultimately adopting factor test from the Equal Employment Opportunity Commission's Compliance Manual). Each of the following six factors is relevant to the inquiry whether a shareholder-director is an employee: (1) whether the organization can hire or fire the individual or set the rules and regulations of the individual's work; (2) whether the individual reports to someone higher in the organization; (3) whether and, if so, to what extent the individual is able to influence the organization; (4) whether the parties intended that the individual be an employee, as expressed in written agreements or contracts; (5) whether the individual shares in the profits, losses and liabilities of the organization." *Id*. at 449-50. An employer, on the other hand, "is the person, or group of persons, who owns and manages the enterprise." *Id*. at 450. "The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed." *Id*.

The Shareholder Agreement clearly contemplates that Saul Tinoco would continue to do electrical work for the company, would be compensated for that work on an hourly basis, and the same commission as he had received while an employee. *See supra* at n.6; Pls.' Mem. at 10. Furthermore, the agreement explicitly provides that Saul Tinoco and the other minority shareholders would not be responsible for any of CM Management's debts. *Id*. On the other hand, the Shareholder Agreement allocates to Schlyer total control over CM Management's capital expenditures, debt, and other financing arrangements, as well as the negotiation of contracts. *Id*. Most importantly, the Shareholder Agreement explicate allocates to Schlyer total control over hiring and firing employees. *Id*. Considering these terms in light of the *Clackamas* factors, the Shareholder Agreement strongly supports the Trustees' position that Saul Tinoco continued to be an employee (while Schlyer continued to be the employer) after he became a minority shareholder.

9

II that Schlyer is personal liable for CM Management's failure to make fringe benefit contributions that have not already been considered in the court's discussion of CM Management's liability on Count I. Defendants do not dispute that in the event an audit disclosed a willful violation of the CBA and the related declarations of trust, the Trustees could seek to hold CM Management's owners and partners "personally liable for any underpayment or other pecuniary loss to the [funds] attributable to such conduct." *See supra* at 2. Here, defendants admit that Schlyer is a corporate officer of CM Management who was responsible for making fringe benefit contributions on behalf of employees and who signed and submitted the contribution reports regarding Saul Tinoco. Moreover, Defendants do not dispute the accuracy of the audit requested by the Trustees, which disclosed that CM Management failed to make certain fringe benefit contributions on behalf of Saul Tinoco between June 1, 2005 and February 28, 2006. Lastly, defendants concede that they chose to stop making contributions on behalf of shareholders based on their reading of the CBA. *See* Defs.' Reply to Pls.' L.R. 56.1 SoF ¶ 23 and Defs.' L.R. 56.1 SoF ¶ 5. Because of defendants' admissions and failure to advance a coherent argument excusing their failure to make fringe benefit contributions, the Trustees are entitled to summary judgment against Schlyer for CM Management's willful failure to do so.

**CONCLUSION AND ORDER**

For the foregoing reasons, the Trustees' motion for summary judgment [#21] is granted

and defendants' cross-motion for summary judgment [#23] is denied.


Dated: March 6, 2009               Enter:  _____
                                           JOAN HUMPHREY LEFKOW
                                           United States District Judge